IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CRIMINAL DOCKET NO. 5:04CR65-V

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>vs. )<br>)<br>MATTHEW JOHNSON, )<br>     Defendant. )<br>_____ ) | **O R D E R** |

**THIS MATTER** is before the Court upon Defendant's *Pro Se* "Notice Of Motion For Reconsideration ...," filed April 19, 2011.[1] (Document #105)

On February 22, 2011, this Court denied relief sought by the Defendant, including a Motion For Return Of Property, a *Pro Se* Motion To Set Aside A Declaration Of Forfeiture Under 18 U.S.C. §983(e)(1), and a supplemental filing of August 16, 2010. (Documents ##60, 94, 98)

The Court first notes that while there is some discrepancy as to the exact items at issue, records at the Iredell County Jail reflect that, in addition to the $1,834.00 in his possession, Defendant Johnson's personal property included: one pair of blue boxers, one pair of black pants, one brown wallet, one gray shirt, one black watch, one yellow necklace, one yellow ring, one pair of sunglasses, two black sandals, and two white socks.[2] (Document #102 / Exh. A) According to the Defendant, there was a $700 leather jacket confiscated as well as several other items not identified by the Iredell County Jail as Defendant's personal property. (Document #106, at 19.)

---

[1] Johnson has also apparently sought mandamus relief from the Fourth Circuit Court of Appeals. *See Johnson v. United States*, COA No. 12-1209 (4th Cir. 2012).

[2] Although there is no evidence in the record concerning actual value, Defendant Johnson represented in a filing dated August 16, 2010 that the yellow (gold) necklace was valued at $4,500. (Document #106, at 19.)

The Government represented in its response to the earlier round of motions that <u>it had no property to return to the Defendant</u>. The record demonstrates that the $1,834.00 seized was turned over to the North Carolina Department of Revenue to satisfy the state drug tax[3]; property records at the Iredell County Jail indicate that Johnson's property was returned to him upon discharge; and the car Johnson was driving when stopped did not belong to him, was never claimed, and was eventually sold at auction pursuant to a state court order. (Document #102 / Exhs. A, B) Reportedly, any personal property not previously seized would likely have been discarded by the supervisor of vehicle services prior to the sale. (Document #102, at 2.) In other words, the Government advised the Court that the property at issue was either returned to Johnson when he was transferred from the Iredell County Jail to the Mecklenburg County Jail or destroyed prior to the auctioning off of the car Defendant was driving at the time of his arrest. (Document #102 / Exh. A) The Government explicitly stated it had no other record of authorities possessing or otherwise disposing of Defendant's personal items.[4] (Document #102, at 3.)

In support of reconsideration, Defendant argues that the Iredell County Jail's "Prisoner Property and Admission Control Report" indicating that Johnson received all of his personal property upon release is not determinative because he remained *in custody* when he was transferred from the Iredell County Jail to the Mecklenburg County Jail.[5] In addition, Defendant argues that his things necessarily had to be in the Government's possession because certain of these items (*i.e.*,

---

[3] Any challenge by Defendant regarding the seizure of monies to satisfy the state drug tax is not properly before this Court.

[4] The record does not disclose whether the Assistant U.S. Attorney, or any federal or state law enforcement agent on the case, ever inquired of the Mecklenburg County Jail about Defendant's personal property. In light of the Government's earlier representation, this inquiry was presumably made but was not fruitful.

[5] In fact, Defendant Johnson was never released on bond pretrial.

driver's license) were produced at trial. One trial transcript excerpt provided by the Defendant shows the Assistant U.S. Attorney asking the Defendant on cross-examination about a piece of paper (*i.e.*, rolling paper) with a handwritten phone number on it allegedly found in Johnson's possession at the time of arrest. (Document #106 / Exh. 1) During her questioning about the paper and Johnson's knowledge of the phone number (*i.e.*, the identity of the individual using that phone number), the prosecutor makes reference to a bag containing personal items found on Johnson when he was taken into custody, namely, Johnson's driver's license, the piece of paper with phone number, and the clothes Johnson was wearing. (Document #106 / Exhs. 1, 2)

During the sentencing hearing, this Court directed the Government to return Defendant Johnson's personal effects. (Document #106, at 21.) At that point, the prosecutor stated, "I don't have any problem with [Defendant] getting the property back. I'll just have to find out where it is. I think it's in the custody of the Iredell County Sheriff's Department." (Id.) Thus, the obstacles now are (i) the inability to verify that certain property items were ever in the Government's custody; and (ii) the present location or status of the property Johnson seeks that the Government recognized as belonging to the Defendant. In sum, the materials provided in support of the Motion For Reconsideration do not dictate a different result.

Finally, to the extent Johnson claims that the deprivation of certain property was unauthorized, he may have a civil remedy *in state court* for negligent deprivation of property.[6] *See e.g.*, Pettit v. Unknown FBI Agents, 884 F.2d 1389 (4th Cir.1989) (dismissing federal Bivens[7] action and holding, "An unauthorized deprivation of property by a state official does not constitute a

---

[6] Johnson requests an order requiring the Government "to produce or compensate [him] for said property." (Document #105, at 2.)

[7] Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

violation of the due process clause of the fourteenth amendment if a meaningful post-deprivation state remedy for the loss is available.") (*unpublished*) (*citing* Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981)); *see also* Taylor v. Bright, 229 F.3d 1144 (4th Cir.2000) ("The negligent deprivation of property through the acts of a state or federal employee does not constitute a deprivation of due process.") (*unpublished*) (*internal citation omitted*). With respect to the availability of a state remedy, the Fourth Circuit has held that "North Carolina law provides post-deprivation remedies that satisfy due process requirements." Pettit, 884 F.2d at 1389 (*citing* Wilkins v. Whitaker, 714 F.2d 4 (4th Cir.1983)). More specifically, N.C. Gen. Stat. § 15-11.1 "provides a remedy for the deprivation of property which was lawfully seized." Bailey v. O'Connor, 2010 WL 2640574, *2 (W.D.N.C. June 29, 2010). "North Carolina law also allows individuals to bring actions for property which was unlawfully seized and converted." Bailey, 2010 WL 2640574, *2 (*citing* Yates v. Jamison, 782 F.2d 1182 (4th Cir.1986) and Gallimore v. Sink, 27 N.C. App. 65 (1975)). Therefore, if Defendant elects to continue pursuing the recovery of his property, his remedy is in state court – not this federal district court.

**IT IS, THEREFORE, ORDERED** that Defendant's Motion For Reconsideration is hereby **DENIED**.

Signed: April 20, 2012

Richard L. Voorhees
United States District Judge